IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **BRYCE BROWN,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **CHANDRESH PATEL, ET AL.** | § **CIVIL ACTION NO. 4:24-cv-05036** |
| | § |
| **Defendant,** | § |
| | § |
| **G&A OUTSOURCING III LLC., DBA** | § |
| **ONPOINT LAB, ET AL.** | § |
| | § **JURY TRIAL DEMANDED** |
| **Defendant.** | § |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Defendants G&A Outsourcing III, LLC ("G&A"), OnPoint Lab L.L.C. ("OnPoint Lab"), and Chandresh Patel ("Patel") (collectively, "Defendants")[1] hereby move the Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, for an Order staying this action and compelling arbitration of *pro se* Plaintiff Bryce Brown's ("Plaintiff") claims, pending resolution of the arbitration in accordance with the terms of the binding Arbitration Agreement between the parties.

**I.   INTRODUCTION**

Plaintiff worked at OnPoint Lab[2] until approximately December 18, 2023. As part of his employment with OnPoint Lab, Plaintiff signed a binding, mutual Arbitration Agreement through which he and Defendants agreed to submit ***all disputes*** related to Plaintiff's employment to binding

---

[1] Plaintiff erroneously named the legal entities in this case as "G&A Outsourcing III LLC., DBA OnPoint Lab, et al." Plaintiff refers to two separate entities: (i) G&A Outsourcing III, LLC, and (ii) OnPoint Lab, L.L.C. The undersigned counsel represent both legal entities, along with individual defendant Chandresh Patel.

[2] G&A serves as a Professional Employee Organization ("PEO") for OnPoint Lab.

arbitration, and to arbitrate the gateway issues of arbitrability. However, rather than pursue his claims in arbitration as he contracted to do, Plaintiff instead filed the present lawsuit claiming race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e *et seq* ("Title VII"), retaliation in violation of Title VII, and sex discrimination in violation of Title VII. On January 30, 2025, pursuant to Local Rule 7.1(D), Defendants' counsel emailed Plaintiff a copy of the Arbitration Agreement, then called Plaintiff on the phone asking Plaintiff to abide by his promise to arbitrate but Plaintiff refused. *See* Ex. A, Declaration of Daniel Coolidge at ¶¶ 3-4. On February 17, 2025, Plaintiff indicated he was willing to arbitrate but refused to stay this action. *See id.* ¶ 5. As such, Defendants had no choice but to file the present Motion to Compel Arbitration.

## II.   STATEMENT OF FACTS

During his onboarding to work at OnPoint Lab, Plaintiff was required to review, acknowledge, and electronically sign several employment documents, including a standalone Arbitration Agreement. *See* Ex. B, Declaration of Lisa Bauer, ¶¶ 5-7, and Ex. B-1 thereto ("Arbitration Agreement"). During the onboarding process, new hires like Plaintiff review and sign all necessary documents, including the Arbitration Agreement, via the online employee self-service portal called "G&A Worksite" ("G&A Portal"). *Id.* ¶ 5. Employees are sent an email to their personal email address prompting them to create a unique login and password to create a company account on the G&A Portal. *Id.* They are instructed to keep their username and password confidential so no other person can access another's G&A Portal account. *Id.* New hires including Plaintiff are required to open the Arbitration Agreement as part of the onboarding process. *Id.* ¶ 6. There is no way to skip this part and progress to the acknowledgment section. *Id.* Only after opening the Arbitration Agreement on the G&A Portal can an employee then acknowledge it electronically. *Id.* The employee is also asked to acknowledge a statement that they "understand that my electronic signature will be binding as though I had physically signed this document by

hand. I agree that a printout of this agreement may be accepted with the same authority as the original." *Id.* The employee may then click the "I Agree" tab to acknowledge and accept the Arbitration Agreement. *Id.* The employee is then notified that by electronically signing the documents, they are agreeing to be legally bound. *Id.*

On August 14, 2023, Plaintiff logged into G&A Portal using his unique log-in credentials, downloaded and opened the Arbitration Agreement, and acknowledged and accepted it. *See id.* ¶ 7, Ex. B-2. Once Plaintiff electronically signed, the system generated a record that he did so. *Id.*

The Arbitration Agreement provides, in relevant part:

> The employee identified below ("Employee"), on the one hand, and Worksite Employer, ONPOINT LAB ("Company"), and G&A Partners ("PEO" or "G&A Partners"), on the other hand, agree to utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company and/or Employee and PEO, including but not limited to disputes regarding the application and selection process, the employment relationship, termination of employment, and compensation. For purposes of this Agreement, any reference to "G&A Partners" or "PEO" is intended to broadly refers to and specifically include the G&A Partners business entity that actually pays you or paid you at anytime and/or any of its parents, subsidiaries, or affiliates. This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). **All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial.**

Ex. B-1 at 1 (emphasis in original).

> **COVERED CLAIMS.** This Agreement is intended to be as broad as legally permissible. Except as otherwise provided in this Agreement, Employee, the Company, and G&A Partners agree that any claim, dispute, and/or controversy, past, present, or future, that Employee may have against the Company (or its parents, subsidiaries, affiliates, owners, directors, officers, managers, employees, or agents), or G&A Partners (or its owners, directors, officers, managers, employees, or agents), or that the Company or G&A Partners may have against Employee, shall be submitted to and determined exclusively by final and binding arbitration. Except as otherwise provided, included within the scope of this Agreement are all disputes, whether based on tort, contract, common law, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation … based on Title VII … or any other state or federal law or regulation) …

3

> …
>
> <u>The arbitrator—and not any federal, state, or local court or agency—will have exclusive authority to resolve any dispute relating to the scope, applicability, validity, enforceability, or waiver of this Agreement</u>.

*Id.* at 1 (emphasis added).

> **PROCEDURES AND RULES.** Unless otherwise agreed to by the parties, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and except as provided in this Agreement or otherwise agreed to, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment).

*Id.* at 2.

> **CONSTRUCTION AND ENFORCEMENT OF THIS AGREEMENT.** This is the entire agreement between Employee, on the one hand, and the Company and/or PEO, on the other hand, regarding dispute resolution, and unless this Agreement is deemed invalid, unenforceable, or inapplicable in its entirety, this Agreement supersedes any and all prior agreements regarding these issues. … if any provision of this Agreement is deemed to be void, voidable or otherwise unenforceable, in whole or in part, such provision will be severed from this Agreement. All remaining provisions will remain in full force and effect. Any agreement contrary to this Agreement must be entered into, in writing, by Employee, President of the Company and President of PEO. Any contractual disclaimers the Company and/or PEO have in any handbooks, other agreements, or policies do not apply to this Agreement. PEO and the Company's respective owners, affiliates, future affiliates, directors, officers, members, managers, employees, or agents are third-party beneficiaries of this Agreement and may enforce this Agreement.

*Id.* at p. 3-4.

> **AGREED AND RECEIVED BY EMPLOYEE:**
>
> **BY EITHER SIGNING THIS AGREEMENT BY HAND (IF THIS IS A PAPER COPY) OR THROUGH AN "ELECTRONIC SIGNATURE" BELOW OR ON A SEPARATE SCREEN (IF EMPLOYEE IS REVIEWING THIS AGREEMENT ELECTRONICALLY/VIA COMPUTER), EMPLOYEE IS AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. EMPLOYEE ALSO AGREES AND AUTHORIZES THE USE OF AN ELECTRONIC SIGNATURE AS EMPLOYEE'S ACCEPTANCE TO THIS AGREEMENT AND**

> **UNDERSTANDS AND ACKNOWLEDGES THAT EMPLOYEE'S ELECTRONIC SIGNATURE IS INTENDED TO SHOW EMPLOYEE'S ACCEPTANCE AND IS AS VALID AND HAS THE SAME LEGAL EFFECT AS AN INK SIGNATURE.**
>
> **DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGMENT AND AGREEMENT.**

*Id.* at 5 (emphasis in original). Plaintiff accepted the Arbitration Agreement and agreed to all of its terms as part of his onboarding process. *Id.*; Ex. B at ¶¶ 7-8; Ex. B-2.

### III. ARGUMENTS AND AUTHORITIES

As set forth more fully below, the Arbitration Agreement Plaintiff signed must be enforced according to its terms under the FAA. Notably, as part of that Arbitration Agreement, Plaintiff clearly and unmistakably agreed that any challenges he may make to the applicability and enforceability of the Arbitration Agreement must be decided by the arbitrator—not the Court. *See Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 68, 70 (2010) (finding a similar delegation clause enforceable and holding that the motion to compel arbitration should have been granted). As such, only the Arbitrator can decide any objections Plaintiff may make to the enforceability or applicability of the Arbitration Agreement with regard to his claims here. Finally, even if the Court did consider the "gateway" issues, the Arbitration Agreement is valid and enforceable, and covers the claims Plaintiff alleges in the lawsuit against Defendants. Therefore, all of Plaintiff's claims must be submitted to binding arbitration.

**A.    The FAA Governs the Parties' Arbitration Agreement.**

Originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts," the FAA codifies a strong federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991); *see also Circuit City Stores v. Adams,* 532 U.S. 105, 122-23 (2001) (noting the

significant benefits of arbitrating claims in the employment context.).[3] Section 2 of the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The U.S. Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress's Commerce Clause power. *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995); *see also Perry v. Thomas,* 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). Thus, arbitration agreements between former employees and companies that engage in interstate activities are subject to the FAA. Here, the Agreement specifies that it is governed by the FAA, *see* Arbitration Agreement at 1, which alone is sufficient to bring it within the purview of the FAA. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006). In addition, the Arbitration Agreement is enforceable under the FAA because it is a written agreement that involves and/or is related to interstate commerce. G&A is a nation-wide PEO, and OnPoint Lab performs laboratory testing services. Therefore, Defendants are engaged in service-related industries in various states, are subject to applicable federal regulations, and utilize interstate channels of communication, including without limitation interstate mail, electronic mail, and the internet. *See* Ex. B, ¶¶ 3-4.

---

[3] State law treats arbitration agreements similarly. *See Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996); *Kirby Highlands Lakes Surgery Ctr., L.L.P. v. Kirby,* 183 S.W.3d 891, 896 (Tex. App.—Austin 2006, no pet.) ("It is well settled that '[a]rbitration is heavily favored under federal and state law and should not be denied unless it can be said with positive assurance that the arbitration clause cannot be interpreted so as to encompass the dispute in question.'").

Because Plaintiff's employment relationship affects interstate commerce, the Arbitration Agreement involves "commerce" within the meaning of the FAA, and the Arbitration Agreement itself specifies that it is governed by the FAA, the FAA applies.[4]

### B.  The Arbitration Agreement's Delegation to the Arbitrator to Decide the "Gateway Issues" is Clear and Unmistakable.

Normally, in deciding whether to compel arbitration under the FAA, a court is charged with, and limited to, determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). However, there is an exception to this general rule when "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."). In such cases, the court examines the underlying contract to determine whether the parties have agreed to delegate the question of arbitrability to the arbitrator. *Rent-A-Center W.,* 561 U.S. at 63, 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Here, the parties clearly and unmistakably agreed that "[t]he arbitrator—and not any federal, state, or local court or agency—will have exclusive authority to resolve any dispute relating to the scope, applicability, validity, enforceability, or waiver of this Agreement."

---

[4] Texas law is consistent with the federal standard. An agreement to arbitrate in Texas is enforceable under the FAA if: (1) an agreement exists; and (2) the claims raised are within the scope of the agreement. *See In re AdvancePCS Health, L.P.,* 172 S.W.3d 603, 605 (Tex. 2005); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996). If for any reason the FAA is inapplicable to Plaintiff's dispute, the arbitration is enforceable under Texas General Arbitration Act, which provides that "a written agreement to arbitrate is valid and enforceable." *See* Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.*

7

Arbitration Agreement at 1. Through this provision, Plaintiff agreed that the Arbitrator—and not the Court—would be empowered to decide the gateway issues. The United States Supreme Court has held just such a delegation clause to be enforceable. *See Rent-A-Center, W.,* 561 U.S. at 68-72.[5] When the parties' contract delegates the arbitrability question to an arbitrator—as they have done here—a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. *See Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019). This "is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

Based on the Supreme Court's controlling decisions in *Rent-A-Center, West, Inc*. and *Henry Schein, Inc*., any challenges to the enforceability, applicability, or validity of the Arbitration Agreement must be submitted to arbitration. Thus, to the extent Plaintiff challenges the enforceability or applicability of the Arbitration Agreement, the Court must compel arbitration of that dispute as well. On this basis alone, the Court should compel arbitration of Plaintiff's claims.

**C.     The Court Should Compel Arbitration Because the Arbitration Agreement is Enforceable Under the FAA.**

Because all issues of enforceability and arbitrability are for the Arbitrator's determination, the Court cannot rule on any challenges Plaintiff may raise to the applicability or enforceability of the Arbitration Agreement. Yet even if the Court were empowered to determine those issues, the outcome is the same—Plaintiff must arbitrate his claims. As noted, a party seeking to compel arbitration under the FAA must establish that: (1) there is a valid agreement between the parties;

---

[5] Furthermore, courts have held that the incorporation of arbitration rules which themselves authorize the arbitrator to decide the gateway issues, as is the case in the Arbitration Agreement Plaintiff signed, is also sufficient evidence that the parties agreed to delegate the determination of the gateway issues to the arbitrator. *See, e.g., Dish Network LLC v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018); *see also* AAA Employment Arbitration Rule 6(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); *see also, Baugh v. Allied Professionals Ins. Co.,* 2019 WL 1358855, at *4 (D. Utah Mar. 26. 2019).

and (2) the claims for which arbitration is sought fall within the scope of the arbitration agreement. *Howsam,* 537 U.S. at 83-84; *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004); *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 929–30 (S.D. Tex. 2008). *See also In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex. 2001) ("Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims."). "If the court finds this two prong inquiry is satisfied, arbitration is mandatory." *Gray v. Sage Telecom, Inc.,* 410 F. Supp. 2d 507, 509-10 (N.D. Tex. 2006).

    **1.**  ***Plaintiff Entered into a Valid and Enforceable Agreement to Arbitrate.***

When deciding whether the parties agreed to arbitrate the dispute in question, courts apply ordinary state-law principles that govern the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Halliburton Energy Srvcs., Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 530 (5th Cir. 2019) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."). "[I]n applying general state law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], . . . due regard must be given to the federal policy favoring arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 475-76 (1989) (internal citations omitted).

In Texas, "[f]or a contract to exist, there must be an offer, acceptance, and consideration." *Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). When determining whether a party has in fact assented to the terms of an agreement, courts look to the communications between the parties and the acts and circumstances surrounding the communications. *Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In this case, the parties' agreement to arbitrate contained in the

9

Arbitration Agreement is clearly valid and enforceable and supported by ample consideration for multiple reasons. First, Plaintiff unequivocally accepted and acknowledged his consent to arbitrate any claims arising out of his employment with Defendants when he electronically signed the Arbitration Agreement on August 14, 2023.[6] Accordingly, Plaintiff accepted the terms of the Arbitration Agreement and a valid and enforceable agreement to arbitrate was formed. *See Thick v. Dolgencorp of Tex., Inc.,* 2017 U.S. Dist. LEXIS 4258, 5-6 (E.D. Tex. Jan. 11, 2017) ("Texas has adopted the Uniform Electronic Transactions Act (Tex. Bus. & Com. Code §§ 322.001-322.021), which provides that electronic signatures may be used in contract formation.") (citing Tex. Bus. & Com. Code § 322.009(a)).

Second, the agreement to arbitrate is expressly mutual, *i.e.,* both Plaintiff and Defendants are required to arbitrate disputes covered by it. *See Lizalde v. Vista Quality Mkts.,* 746 F.3d 222, 225 (5th Cir. Tex. 2014) (applying Texas law and stating that, "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."); *see also In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex. 2006) (consideration may take the form of bilateral promises to arbitrate). Here, the Arbitration Agreement clearly states it applies equally to any claim Plaintiff may have against Defendants or that Defendants may have against Plaintiff, meaning there is sufficient consideration. *Id.*

The Arbitration Agreement is therefore valid and enforceable.

### 2. ***Plaintiff's Claims Clearly Fall Within the Scope of the Agreement.***

The Arbitration Agreement undeniably covers Plaintiff's claims. Within his Amended Complaint, Plaintiff asserts causes of action against Defendants relating to his employment and

---

[6] *See* Tex. Bus. & Com. Code § 322.007(d); *Williamson v. Bank of N.Y. Mellon,* 947 F. Supp. 2d 704, 709 (N.D. Tex. 2013).

the termination of his employment. The express terms of the Arbitration Agreement cover "all disputes, whether based on tort, contract, common law, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation … based on Title VII … or any other state or federal law or regulation) …." Ex. B-1 at 1. Plaintiff's claims are all based on Title VII or another federal law (Section 1981). They are thus all expressly covered by the Arbitration Agreement.[7]

### D.    The Present Lawsuit Must Be Stayed.

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement***, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Court must therefore stay the proceeding until a resolution is reached in arbitration. *See Gutierrez v. Acad. Corp.,* 967 F. Supp. 945, 947 (S.D. Tex. 1997); *Tittle v. Enron Corp.,* 463 F.3d 410, 417 n. 6 (5th Cir. 2006) ("a stay is mandatory at the request of a party if the dispute is arbitrable"); *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56 (Tex. 2008) (if a "claim falls within the scope of a valid arbitration agreement, the 'court has no discretion but to compel arbitration and stay its own proceedings.'").

---

[7] It should be noted that the Ending Force Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. § 402, does not apply. The EFAA applies to sexual assault disputes or sexual harassment disputes, not claims for discrimination on account of sex. *See* 9 U.S.C. § 402(a); *see also Dixon v. Dollar Tree Stores, Inc*., No. 22-CV-131S, 2023 WL 2388504, at *7 (W.D.N.Y. Mar. 7, 2023) ("[The EFAA] also does not preclude arbitration of claims under other sex and age discrimination claims, such as [plaintiff's] allegations of disparate treatment because of her age and gender, that do not allege sexual assault or harassment.").

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Compel and enter an Order compelling arbitration of Plaintiff's claims, and staying the case, pending the outcome.

Dated: February 24, 2025

*Of Counsel:*

Daniel Coolidge
State Bar No. 24113693
Federal I.D. No. 3665857
dcoolidge@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   713.951.9400
Facsimile:   713.951.9212

Respectfully submitted,

*/s/ G. Mark Jodon*
G. Mark Jodon *(Attorney-in-Charge)*
State Bar No. 6052
Federal I.D. No. 6052
mjodon@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   713.951.9400
Facsimile:   713.951.9212

**ATTORNEYS FOR DEFENDANTS G&A OUTSOURCING III, LLC, ONPOINT LAB, L.L.C., AND CHANDRESH PATEL**

## CERTIFICATE OF CONFERENCE

As described in further detail by Exhibit A, I hereby certify that I contacted Plaintiff by telephone and email on January 30, 2025, and February 17, 2025, and by email on February 19, 2025, to discuss the contents of this Motion, and Plaintiff indicated his refusal to stay his lawsuit pending arbitration.

*/s/ Daniel Coolidge*
Daniel Coolidge

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 24, 2025, a copy of the foregoing document has been electronically filed with the Court, and served on the following by mail:

Bryce Brown
935 N. Wilcrest Dr., Apt. 1018
Houston, Texas 77079
Brycebrown19@gmail.com

***Pro Se Plaintiff***

                */s/ G. Mark Jodon*
                G. Mark Jodon

4929-2995-9705.5 / 104391.1002