IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
MAR 17 2025
Nathan Ochsner, Clerk of Court

| | |
|---|---|
| BRYCE BROWN, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 4:24-cv-05036 |
| § | |
| CHANDRESH PATEL, ET AL., § | |
| § | |
| Defendant, § | |
| § | |
| G&A OUTSOURCING III LLC., DBA § | |
| ONPOINT LAB, ET AL., § | |
| § | |
| Defendant. § | |

## THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL ARBITRATION

### I. INTRODUCTION

Plaintiff Bryce Brown respectfully submits this opposition to Defendants' Motion to Compel Arbitration. This Court should deny the motion because enforcing the arbitration agreement would effectively deprive Plaintiff of any forum to vindicate his statutory rights under Title VII of the Civil Rights Act of 1964. The arbitration agreement at issue is both procedurally and substantively unconscionable, and enforcement would contravene the strong public policy favoring judicial resolution of employment discrimination claims.

Mr. Brown, an African-American male, was wrongfully terminated from his position as a Sales and Marketing Representative at G&A Outsourcing III LLC, DBA OnPoint Lab after experiencing racial discrimination, sexual discrimination, and retaliation. The arbitration

1

agreement Defendants now seek to enforce would impose prohibitive costs on Mr. Brown, effectively barring his access to any forum for resolving his claims. Moreover, the recent passage of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") directly impacts portions of Mr. Brown's claims.

The Supreme Court has consistently recognized that arbitration agreements may not be enforced if they prevent the "effective vindication" of federal statutory rights. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). Similarly, the Fifth Circuit has held that arbitration agreements that impose excessive costs may be unenforceable. See *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003). This case presents precisely the circumstances where enforcement of the arbitration agreement would prevent the effective vindication of Mr. Brown's Title VII rights.

## II. THE ARBITRATION AGREEMENT SHOULD NOT BE ENFORCED

The arbitration agreement between Mr. Brown and Defendants should not be enforced because it is fundamentally unconscionable both in its formation and substantive terms. Under Texas law, a contract may be invalidated if it is both procedurally and substantively unconscionable. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

### A. General Principles of Unconscionability Under Texas Law

Texas courts recognize that unconscionability has both procedural and substantive components. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014). Procedural unconscionability refers to the circumstances surrounding the formation of the contract, while substantive unconscionability concerns the fairness of the terms themselves. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002).

When both forms of unconscionability are present, courts have substantial discretion to refuse enforcement of the agreement. *Royston, Rayzor, Vickery & Williams LLP v. Lopez*, 467 S.W.3d 494, 499-500 (Tex. 2015). This is particularly true in the employment context, where courts have recognized the inherent power imbalance between employers and individual employees. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006).

## B. The Unequal Bargaining Position Between the Parties

In this case, the disparity in bargaining power between the parties was extreme. On one side was Mr. Brown, an individual seeking employment with no specialized legal knowledge and limited financial resources. On the other side were Defendants, sophisticated corporate entities with access to legal departments and significant financial resources.

Courts have recognized that such disparity in bargaining power is a crucial factor in determining unconscionability. *Dresser Indus., Inc. v. Pagett*, 821 S.W.2d 760, 767 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (noting that unconscionability determinations involve "looking at the totality of the circumstances surrounding the transaction, including the parties' general commercial background and their specific needs").

## C. Mr. Brown's Specific Employment Situation

Mr. Brown, as documented in his declaration, was presented with the arbitration agreement as part of the onboarding process for his position as a Sales and Marketing Representative. The economic reality of his situation created significant pressure to accept whatever terms were offered. As an African-American male seeking employment, Mr. Brown faced the difficult choice of either accepting the arbitration agreement as presented or foregoing the employment opportunity entirely.

3

The Supreme Court has acknowledged that "inequality of bargaining power between employers and employees" is a significant consideration in evaluating arbitration agreements in the employment context. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). This case presents precisely the type of unequal bargaining situation that can render an agreement unconscionable.

### D. Substantive Unconscionability of the Agreement

The arbitration agreement contains substantively unconscionable provisions that unfairly favor the Defendants, including:

1. Cost-splitting provisions that would require Mr. Brown to bear half of the arbitrator's compensation and other substantial costs;
2. Confidentiality requirements that shield Defendant's alleged discriminatory practices from public scrutiny;
3. Limitations on discovery that disadvantage Mr. Brown in preparing his case.

The Fifth Circuit has recognized that such provisions can render an arbitration agreement substantively unconscionable, particularly when they effectively prevent employees from vindicating their statutory rights. *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (cited approvingly by the Fifth Circuit in *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003)).

For these reasons, the Court should find the arbitration agreement unconscionable and refuse to enforce it against Mr. Brown. The specific details of procedural unconscionability are addressed more fully in Section VI of this opposition.

4

## III. ARBITRATION COSTS WOULD BE PROHIBITIVELY EXPENSIVE

The prohibitive costs of arbitration would effectively prevent Mr. Brown from pursuing his legitimate claims against Defendants, rendering the arbitration agreement unenforceable under well-established Supreme Court and Fifth Circuit precedent.

### A. Specific Arbitration Costs Would Impose a Prohibitive Financial Burden

Under the AAA Employment Arbitration Rules referenced in the arbitration agreement, Mr. Brown would face substantial financial obligations that far exceed what he would incur in federal court. These costs include:

An initial filing fee of $300 (AAA Employment Rules, Administrative Fee Schedule);

1. Half of the arbitrator's compensation, which typically ranges from $1,500 to $2,500 per day for employment matters according to the AAA's arbitrator compensation rates (See AAA Employment Arbitrator Compensation 2023 Schedule);

2. Administrative case management fees of approximately $500 for a single-arbitrator case (AAA Employment Rules Administrative Fee Schedule);

3. Hearing room rental fees, which typically cost $300-$500 per day (AAA Fee Schedule);

4. Court reporter fees for transcription services, typically $700-$1,000 per day of hearing (Industry standard rates);

5. Expenses associated with conducting discovery, including deposition costs, which are substantially higher in arbitration than in federal court where facilities are provided at no cost to the parties.

5

Based on the complexity of this case involving multiple claims under Title VII, a conservative estimate places Mr. Brown's share of arbitration costs between $10,000 and $15,000, assuming a three-day hearing and standard pre-hearing proceedings. By contrast, filing a complaint in federal court would cost Mr. Brown only $402, with no additional fees for judge's compensation or courtroom use.

**B. Mr. Brown's Financial Circumstances Make These Costs Prohibitive**

Mr. Brown's current financial circumstances make it impossible for him to bear these arbitration costs:

1. He was wrongfully terminated on December 18, 2023, and was unemployed for over two months;
2. He has depleted his savings in an effort to meet basic living expenses;
3. His current monthly expenses total approximately $3,569.00, including:

    Rent: $1,469.00

    Utilities: $400.00

    Food: $500.00

    Medical expenses: $400.00

    Car payment and insurance: $500.00

    Other necessities: $300.00

4. He has no available credit or assets that could be liquidated to pay arbitration costs;
5. As shown in his declaration, his credit score has been negatively impacted by his termination, making it impossible to secure financing for arbitration costs.

The substantial gap between Mr. Brown's income and expenses demonstrates that he cannot possibly afford arbitration costs while maintaining basic subsistence.

## C. Supreme Court and Fifth Circuit Precedent Support Finding These Costs Prohibitive

The Supreme Court has long recognized that prohibitive arbitration costs can render an agreement unenforceable. In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000), the Court held that "the existence of large arbitration costs could preclude a litigant... from effectively vindicating her federal statutory rights in the arbitral forum." While the party seeking to invalidate an arbitration, agreement bears the burden of showing the likelihood of incurring prohibitive costs, Mr. Brown has met this burden with concrete evidence of the likely arbitration costs and his financial inability to bear them.

The Fifth Circuit has developed a case-by-case approach to determining whether arbitration costs are prohibitively expensive. In *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003), the court held that requiring a party with statutory employment claims to pay all or part of an arbitrator's compensation is "inconsistent with the goal of providing an accessible alternative forum" when those costs would be prohibitive. Similarly, in *Belgau v. Albertsons, LLC*, 2006 U.S. Dist. LEXIS 71146 (W.D. Tex. Sept. 29, 2006), the court recognized that excessive arbitration costs may render an arbitration agreement unenforceable.

In cases specifically within this Circuit, district courts have refused to compel arbitration where plaintiffs demonstrated that costs would be prohibitively expensive relative to their financial situation. In *Paulson v. Halliburton Energy Servs.*, 809 F. Supp. 2d 526, 537-38 (S.D. Tex. 2011), the court denied a motion to compel arbitration where the plaintiff showed that arbitration costs would be prohibitively expensive given his financial circumstances and potential recovery.

## D. The Cost-Splitting Provision Contravenes the "Effective Vindication" Doctrine

The arbitration agreement's cost-splitting provision directly contravenes the Supreme Court's "effective vindication" doctrine, which holds that arbitration agreements that prevent the effective vindication of federal statutory rights are unenforceable. *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013). Under this doctrine, courts must ensure that arbitration agreements do not function as exculpatory clauses that immunize defendants from liability under federal statutes.

The Fifth Circuit has explicitly recognized that cost-splitting provisions may render arbitration agreements unenforceable, particularly in the employment context. In adopting the reasoning of *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663-65 (6th Cir. 2003), the Fifth Circuit acknowledged that cost-splitting provisions can effectively preclude employees from bringing their claims, particularly where the expected costs of arbitration are high in relation to the employee's financial situation and potential recovery.

The arbitration agreement here imposes costs on Mr. Brown that would force him to choose between abandoning his valid Title VII claims or facing expenses that would severely jeopardize his basic subsistence. This is precisely the type of agreement that prevents effective vindication of statutory rights and should not be enforced.

## IV. THE ENDING FORCED ARBITRATION OF THE SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT OF 2021 MAY APPLY

### A. Overview of the Ending Forced Arbitration Act

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") provides statutory grounds for denying the motion to compel arbitration with respect to Mr. Brown's sexual discrimination claims. Signed into law on March 3, 2022, the EFAA

amended the Federal Arbitration Act to invalidate pre-dispute arbitration agreements for sexual assault and sexual harassment claims.

Section 402(a) of the EFAA provides that,: "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no pre-dispute arbitration agreement or pre-dispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."

Importantly, the EFAA defines "sexual harassment dispute" broadly as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). This definition encompasses Mr. Brown's claims of sexual discrimination under Title VII.

## B. Applicability to Mr. Brown's Claims

Mr. Brown's complaint explicitly alleges sexual discrimination in violation of Title VII. In paragraph 19 of his Original Complaint, Mr. Brown states that he "submitted the charge of racial discrimination, sexual discrimination, retaliation, and wrongful termination to the EEOC" (Complaint, p. 6). His Fourth Claim for Relief is specifically for "Sex Discrimination (Title VII)" (Complaint, p. 10).

The sexual discrimination allegations in Mr. Brown's complaint fall squarely within the EFAA's definition of a "sexual harassment dispute." Under Title VII, sexual discrimination includes sexual harassment as well as other forms of discrimination based on sex. The Supreme Court has long recognized that sexual harassment is a form of sex discrimination prohibited by Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64 (1986) ("Without question, when a

9

supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex.").

## C. The EFAA Applies Retroactively to Existing Arbitration Agreements

The EFAA expressly applies to existing arbitration agreements. Section 3 of the Act states that it applies to "any dispute or claim that arises or accrues on or after the date of enactment." Mr. Brown's termination occurred on December 18, 2023, well after the EFAA's enactment on March 3, 2022. Therefore, his claims fall within the temporal scope of the EFAA.

Courts have consistently confirmed the EFAA's retroactive application to existing arbitration agreements for qualifying disputes that arise after the Act's effective date. In *Mihalik v. Credit One Bank, N.A.*, 2022 U.S. Dist. LEXIS 127976, at *12 (E.D.N.Y. July 20, 2022), the court held that "the EFAA invalidates otherwise-enforceable arbitration agreements with respect to sexual assault and sexual harassment claims, given the time of the conduct at issue."

## D. Treatment of Mixed Claims Under the EFAA

Mr. Brown's complaint presents mixed claims, including sexual discrimination, racial discrimination, and retaliation. Courts have taken varied approaches to cases involving both claims covered by the EFAA and claims not covered:

1. **Bifurcation Approach**: Some courts have bifurcated proceedings, allowing sexual harassment claims to proceed in court while compelling arbitration of remaining claims. *Johnson v. Everyrealm, Inc.*, 2022 U.S. Dist. LEXIS 209409 (S.D.N.Y. Nov. 18, 2022).

2. **Intertwining Approach**: Other courts have allowed all claims to proceed in court where they are factually intertwined with sexual harassment claims. *Khurana v. Strategic Adviser, Inc.*, 2023 U.S. Dist. LEXIS 57152 (S.D.N.Y.

Mar. 31, 2023) (denying motion to compel arbitration for all claims where sexual harassment claims were "inextricably intertwined" with other employment claims).

In Mr. Brown's case, his sexual discrimination claims arise from the same employment relationship and course of conduct as his racial discrimination and retaliation claims. The factual allegations supporting each claim are intertwined, with many of the same actions by Defendants simultaneously constituting both racial and sexual discrimination. Bifurcating these claims would result in duplicative proceedings, potentially inconsistent outcomes, and additional costs and delays—precisely the inefficiencies that the FAA was designed to avoid.

### E. Policy Considerations

The EFAA reflects Congress's determination that sexual harassment and assault claims are particularly ill-suited for private arbitration. The House Judiciary Committee Report on the EFAA notes that the Act was intended to "restore access to justice for millions of Americans who are currently locked out of the court system and are forced to settle sexual assault and harassment claims in private arbitration" (H.R. Rep. No. 117-234, at 3 (2022)).

By enacting this legislation, Congress has expressed a strong public policy favoring judicial resolution of sexual harassment claims. This policy should inform the Court's interpretation of the EFAA's scope, particularly in cases like this one where sexual discrimination claims are intertwined with other employment discrimination claims.

Even if the Court determines that some of Mr. Brown's claims must be arbitrated, his sexual discrimination claims should proceed in this forum pursuant to the EFAA. At a minimum, the Court should deny the motion to compel arbitration with respect to these claims, consistent with the clear congressional mandate embodied in the EFAA.

## V.     Public Policy Concerns Regarding Confidentiality and Non-Disclosure

Compelling arbitration in this case would contravene strong public policy interests, particularly given the allegations of race discrimination, sexual discrimination, and retaliation under Title VII. The confidential nature of arbitration proceedings would serve to shield Defendant's alleged unlawful conduct from public scrutiny, contrary to the remedial and deterrent purposes of anti-discrimination laws.

First, the arbitration process inherently lacks transparency. Unlike court proceedings, arbitration awards are typically not published, and proceedings are conducted behind closed doors. The Third Circuit has recognized that "the public has a strong interest in knowing about the allegations of discrimination by the plaintiff" in civil rights cases. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 (3d Cir. 2008). This lack of transparency undermines the public interest in deterring discriminatory conduct and prevents the development of legal precedent that would benefit similarly situated employees.

Second, confidentiality provisions in arbitration effectively silence victims of discrimination and prevent them from sharing their experiences with others who may have suffered similar treatment. This contravenes the remedial purpose of Title VII, which was enacted to eliminate discrimination in the workplace. As noted by the Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 358 (1995), "the disclosure through litigation of incidents or practices that violate national policy... may reveal patterns of noncompliance with the nation's antidiscrimination policies."

Third, in cases involving allegations of sexual harassment, confidentiality serves to perpetuate harmful workplace cultures by concealing misconduct. The #MeToo movement has highlighted the damaging effects of forced silence in sexual harassment cases. Congress

12

recognized the importance of transparency in these cases by passing the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, which prohibits the enforcement of mandatory arbitration agreements for sexual assault and sexual harassment claims.

Moreover, the Equal Employment Opportunity Commission (EEOC) has consistently expressed concerns about mandatory arbitration and confidentiality requirements in employment discrimination cases. In *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Supreme Court affirmed the EEOC's authority to pursue victim-specific relief in court despite the existence of an arbitration agreement, highlighting the public interest in addressing workplace discrimination.

The Fifth Circuit has recognized that "there exists a public policy against secrecy in affairs of public entities and in favor of public's right to be informed about such affairs." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 427 (5th Cir. 1981). Enforcement of the arbitration agreement in this case would contravene this policy by shielding Defendant's alleged discriminatory practices from public scrutiny and oversight.

Given these substantial public policy concerns regarding confidentiality and non-disclosure in discrimination cases, this Court should deny the Defendants' motion to compel arbitration.

## VI. THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE

Building upon the general principles discussed in Section II, this section demonstrates the specific factors that render the arbitration agreement procedurally unconscionable in its formation and presentation to Mr. Brown.

## A. The Mechanics of the Electronic Onboarding Process Created Procedural Unfairness

The specific mechanics of the G&A Portal's "Click Boarding" platform created an environment where meaningful assent was impossible. According to the Declaration of Lisa Bauer, Director of Compliance Services for G&A, the electronic onboarding process required Mr. Brown to click through multiple pre-formulated documents in sequence (Doc. 11-4, p. 3-4). The technical design of this platform is particularly problematic. Unlike paper documents where all terms are visible at once, the electronic format forced Mr. Brown to navigate through screens that did not allow for comprehensive review. Research has shown that such "clickwrap" agreements result in significantly lower comprehension and retention of terms compared to traditional paper contracts. See *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 383-84 (E.D.N.Y. 2015) (discussing empirical studies on electronic contract formation).

Furthermore, the electronic system was designed to prevent an employee from continuing the onboarding process unless each document was "accepted" in sequence. This created artificial time pressure, as Mr. Brown knew he could not complete his employment paperwork without accepting the arbitration agreement. Such pressure tactics have been recognized as contributing to procedural unconscionability. *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 606-07 (E.D. Pa. 2007).

## B. Timing and Presentation of the Arbitration Agreement Prevented Informed Consent

The timing of the arbitration agreement's presentation—buried within a stack of onboarding documents after Mr. Brown had already resigned from previous employment and accepted Defendants' job offer—created a coercive situation. At this stage, rejecting the arbitration agreement would have meant losing his new position without the security of his previous employment.

14

Courts have recognized that presenting arbitration agreements at this late stage of the hiring process is procedurally unconscionable. In *Domingo v. Ameriquest Mortgage Co.*, 70 F. App'x 919, 920 (9th Cir. 2003), the court found procedural unconscionability where an employer presented an arbitration agreement as a non-negotiable term after the employee had already accepted the position.

The actual presentation format further exacerbated the procedural issues. The arbitration agreement was presented alongside numerous other routine employment documents such as tax forms and benefits elections, deliberately obscuring its significance. This "hiding the ball" tactic has been recognized as procedurally unconscionable. *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 633 (2015) (finding procedural unconscionability where arbitration provision was "hidden amongst numerous other provisions").

### C. Misleading Characterizations of the Arbitration Agreement

The arbitration agreement was deceptively characterized during the onboarding process as a standard, routine document rather than a significant waiver of constitutional rights. The electronic presentation labeled it simply as one of many "required documents" without highlighting its legal significance or consequences.

Courts have found procedural unconscionability where arbitration agreements are mischaracterized or their significance downplayed. In *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003), the court noted that "by burying the arbitration agreement in a packet of standard personnel forms, Circuit City unfairly obscured the importance of the arbitration agreement."

This mischaracterization was particularly problematic given the document's legal consequences. The arbitration agreement effectively waived Mr. Brown's Seventh Amendment

15

right to a jury trial—a constitutional right that should only be waived knowingly and voluntarily. As the Supreme Court has noted, "the right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence... and it should be jealously guarded by the courts." *Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942).

### D. Absence of Explicit Disclosure Regarding Costs and Fee Structures

While the arbitration agreement referenced the American Arbitration Association (AAA) rules, it failed to explicitly disclose the significant costs associated with arbitration under these rules. The agreement merely stated that "the arbitration will be held under the auspices of the American Arbitration Association" and "will be under the then current Employment Arbitration Rules of the AAA" (Doc. 11-5, p. 3).

Crucially, the agreement did not explain:

1. The substantial filing fees for initiating arbitration under AAA rules;
2. The requirement that Mr. Brown pay for half of the arbitrator's compensation;
3. The costs associated with hearing room rental, administrative fees, and court reporter services;
4. How these costs compared to the minimal filing fee for pursuing claims in federal court.

This lack of transparency about costs has been recognized as a significant factor in procedural unconscionability determinations. In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 110 (2000), the court noted that "the absence of an express provision on arbitration costs may... mislead employees about the costs of the arbitration."

16

### E. The Agreement Was Drafted in Legal Language Inaccessible to Laypersons

The arbitration agreement was drafted in complex legal terminology that would be difficult for a non-lawyer to understand. The agreement included technical terms such as "covered disputes," "delegation clause," and references to the "FAA" without adequate explanation. It also contained lengthy, complex sentences with multiple clauses and conditions.

Mr. Brown, who lacks legal training, could not be expected to understand the full implications of these technical terms without legal assistance. Courts have recognized that the use of complex legal terminology can contribute to procedural unconscionability, particularly in the employment context. *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1247 (2011) (finding procedural unconscionability where agreement contained "legalese that would be confusing to a layperson").

### F. The Absence of a Conspicuous Opt-Out Provision

Unlike some arbitration agreements that have been upheld by courts, this agreement contained no opt-out provision that would have allowed Mr. Brown to decline arbitration while still accepting employment. Courts have recognized that the absence of such an opt-out provision is a significant factor in procedural unconscionability analysis. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (finding arbitration agreement procedurally conscionable specifically because it contained a meaningful opt-out provision).

The combination of these specific factors—the electronic onboarding process, the timing and presentation of the agreement, the misleading characterizations, the lack of cost disclosure, the complex legal terminology, and the absence of an opt-out provision—render this arbitration agreement procedurally unconscionable under Texas law. When combined with the substantive

17

unconscionability discussed elsewhere in this opposition, these factors provide ample grounds for the Court to refuse enforcement of the arbitration agreement.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Compel Arbitration. The arbitration agreement at issue is both procedurally and substantively unconscionable and would effectively deprive Plaintiff of any forum to vindicate his statutory rights under Title VII of the Civil Rights Act of 1964.

The prohibitive costs of arbitration, combined with the confidential nature of the proceedings, would create an insurmountable barrier to Plaintiff's ability to pursue his legitimate claims of discrimination, retaliation, and harassment. The Supreme Court has consistently recognized that arbitration agreements may not be enforced if they prevent the "effective vindication" of federal statutory rights. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). This case presents precisely such circumstances.

Moreover, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") directly impacts portions of Plaintiff's claims. This recently enacted federal law invalidates pre-dispute arbitration agreements for sexual assault and sexual harassment claims, reflecting Congress's recognition that such claims are particularly ill-suited for private arbitration proceedings. This Court should honor the public policy embodied in this legislation by denying Defendants' motion to compel arbitration.

The arbitration agreement in this case is a classic contract of adhesion, presented to Plaintiff on a take-it-or-leave-it basis as a condition of employment, with no opportunity for negotiation of its terms. Such agreements are procedurally unconscionable and should not be enforced, particularly when they contain substantively unconscionable provisions such as cost-

splitting requirements that effectively deprive employees of access to any forum for resolving their claims.

In the alternative, if this Court determines that some form of arbitration must proceed, Plaintiff requests that the Court modify the arbitration agreement to: (1) require Defendants to pay all costs of arbitration; (2) permit public disclosure of the proceedings and outcome; and (3) ensure that the arbitration process provides all substantive rights and remedies that would be available in court.

Dated: March 17, 2025

Respectfully submitted,

Bryce Brown
935 N. Wilcrest Dr.
Apt. 1018
Houston, Texas 77079
Phone: (281)763-8151
Brycebrown19@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been mailed in the United States mail, postage prepaid, certified, return receipt requested, to all counsel of record on this 17th day of March 2025, addressed as follows:

Daniel Coolidge
G. Mark Jodon
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.652.4739 direct
713.951.9400 main
dcoolidge@littler.com

ATTORNEYS FOR DEFENDANT